**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Walter Gilomen, et al.,            )   No. 05-CV-518-PHX-FJM
                                   )
    Plaintiffs,                    )   **ORDER**
                                   )
vs.                                )
                                   )
Monaco Coach Corporation,          )
                                   )
    Defendant.                     )
_____)

**I**

Plaintiffs Walter Gilomen and Elizabeth O'Connor (uncertain citizenship, but not citizens of Delaware or Oregon) purchased from Beaudry RV in Mesa, Arizona, a 2004 Windsor motor home manufactured by defendant Monaco Coach Corporation (citizen of Delaware and Oregon). Plaintiffs claim that the motor home is defective, and that defendant is liable for breach of express and implied warranties pursuant to the California Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790 et seq. ("Song-Beverly Act"), and the federal Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-2312 ("Magnuson-Moss Act"). The court has before it defendant's motion for summary judgment (doc. 43), plaintiffs' opposition (doc. 46), defendant's reply (doc. 53), and the parties supplemental briefings (docs. 56 and 57) which were submitted pursuant to our order (doc. 55).

**II**

Plaintiffs' first (implied warranty) and second (express warranty) causes of action arise directly under the Song-Beverly Act. Defendant moves for summary judgment on these claims, contending that the Song-Beverly Act is inapplicable because 1) the purchase contract between plaintiffs and Beaudry RV provides for the application of Arizona law to the contract, and 2) the Song-Beverly Act is only applicable to goods "sold" in California, and the motor home was sold in Arizona. We disagree with both contentions.

**A**

Defendant was not a party to the purchase contract, nor does it claim to be an intended beneficiary under the contract. To the contrary, it claims that there is no privity of contract between plaintiffs and defendant. Although defendant's warranty obligations appear to be triggered by the execution of the purchase contract, defendant fails to show that the bargain struck between plaintiffs and Beaudry RV contemplated the application of its choice of law provision to warranty claims against defendant, the third-party manufacturer. Therefore, defendant fails to show that the contractual choice of Arizona law applies.

**B**

The Song-Beverly Act is a California statute that "protects purchasers of consumer goods by requiring specified implied warranties, placing strict limitations on how and when a manufacturer may disclaim those implied warranties, and providing mechanisms to ensure that manufacturers live up to the terms of any express warranty." Cummins, Inc. v. Superior Court, 36 Cal. 4th 478, 484, 115 P.3d 98, 100 (2005). It applies to goods "sold" in California, and "sale" is defined in relevant part as "[t]he passing of title from the seller to the buyer for a price." Cal. Civ. Code §§ 1791(n)(1), 1793.2(a). Therefore, the Song-Beverly Act is only applicable to the warranties at issue if the title to the motor home passed to plaintiffs in Blythe, California, where the motor home was delivered.

Title passes to the buyer upon delivery only where "the agreement specifically requires the seller to make delivery at the destination." Cal. State Elecs. Ass'n v. Zeos Int'l Ltd., 41 Cal. App. 4th 1270, 1277 (1996). Defendant interprets this to mean that the written

1  purchase contract must explicitly require the delivery for title to transfer upon delivery. We
2  disagree. For title to pass on delivery, it is unnecessary for the delivery requirement to be
3  included in a written contract, as long as the plaintiffs can prove that the agreement
4  specifically required the seller to make the delivery.

5  It is undisputed that the written purchase contract makes no reference to delivery in
6  Blythe. However, it is also undisputed that Mr. Gilomen asked Beaudry RV to deliver the
7  motor home to Blythe at the time of ordering, and that Beaudry RV agreed and delivered it
8  to Blythe. There is no evidence to suggest that Beaudry RV's decision to deliver the motor
9  home to Blythe was an unenforceable promise. To the contrary, despite the absence of
10 reference to delivery in the written purchase contract, the evidence shows that out of state
11 delivery was nonetheless an element of the contract: a Beaudry RV work authorization
12 document lists "out of state delivery" as an "[i]tem[] to be completed as part of the sale
13 agreement," Declaration of Walter Gilomen, Ex. A, and no Arizona taxes were charged on
14 the order, DSOF, Ex. 1, which implies that it was intended to be delivered out of state. We
15 therefore conclude that delivery in California was an element of the purchase agreement.
16 Accordingly, title passed in California, the motor home was "sold" in California as defined
17 in the Song-Beverly Act, and the warranties on the motor home are regulated by the Song-
18 Beverly Act. We therefore deny defendant's motion for summary judgment on plaintiffs' first
19 two causes of action (doc. 43).

**III**

21 Plaintiffs' third (express warranty) and fourth (implied warranty) causes of action arise
22 under the Magnuson-Moss Act. The Magnuson-Moss Act creates federal minimum
23 disclosure and content requirements for written consumer product warranties, and creates a
24 private cause of action for a consumer for breach of warranty. 15 U.S.C. §§ 2301-2312.
25 However, "except in the specific instances in which Magnuson-Moss expressly prescribes
26 a regulating rule, the Act calls for the application of state written and implied warranty law,
27 not the creation of additional federal law." Walsh v. Ford Motor Co., 807 F.2d 1000, 1012
28 (D.C. Cir. 1986) (citation omitted). The Magnuson-Moss Act does not identify which state's

1 substantive warranty law is applicable. Defendant argues that Arizona's–not
2 California's–substantive warranty law is applicable, and moves for summary judgment on
3 plaintiffs' fourth cause of action, contending that it fails under Arizona law because of lack
4 of privity.

5       This case was transferred from the United States District Court for the Central District
6 of California pursuant to 28 U.S.C. § 1404(a) (doc. 21). In accordance with the policies
7 underlying the Erie doctrine, the Supreme Court held in Ferens v. John Deere Co., 494 U.S.
8 516, 531, 110 S. Ct. 1274, 1284 (1990), that a federal district court sitting in diversity and
9 hearing a case transferred pursuant to § 1404(a) shall apply the law that the transferor court
10 would have applied. Although this is not framed as a diversity action, it hinges on issues of
11 state law and therefore is subject to the concerns underlying the Erie doctrine and Ferens.
12 See, e.g., Maternally Yours, Inc., v. Your Maternity Shop, Inc., 234 F.2d 538, 540 n.1 (2d
13 Cir. 1956) ("[I]t is the source of the right sued upon, and not the ground on which federal
14 jurisdiction over the case is founded, which determines the governing law. . . . Thus, the Erie
15 doctrine applies, whatever the ground for federal jurisdiction, to any issue or claim which has
16 its source in state law.") (citations omitted); see also 19 Charles Alan Wright et al., Federal
17 Practice and Procedure § 4520 (2d ed. 1996). Accordingly, we adopt the Ferens rule here,
18 and apply the law that would have been applied by the United States District Court for the
19 Central District of California.

20       Also in accordance with the policies underlying the Erie doctrine, the Supreme Court
21 held in Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S. Ct. 1020, 1021
22 (1941), that a federal district court sitting in diversity shall apply the conflict of law rules of
23 the state in which it is sitting. Again, although this is not framed as a diversity action, this
24 case hinges on issues of state law, and it is therefore subject to the concerns underlying the
25 Erie doctrine and Klaxon. Accordingly, we adopt the Klaxon rule here, and apply the
26 conflict of law rules that would have been applied by the United States District Court for the
27 Central District of California, which would be the California choice of law rules.
28

1    Defendant argues, pursuant to Application Group, Inc. v. Hunter Group, Inc., 61 Cal. App. 4th 881 (1998), that California would apply a "relevant contacts" test to determine the appropriate law to apply to these warranty claims. We disagree. Application Group specifically rejected the "relevant contacts" test, calling it "outdated" and "incomplete," and chose instead to apply a governmental interest analysis to the relevant contacts. Id. at 903-04. Moreover, the governmental interest analysis was used to determine the law applicable to a covenant not to compete in an employment contract; in contrast, we are confronted with breach of warranty claims against a non-contracting party.

The California legislature influenced the relevant conflict of law rule in setting forth the scope of the Song-Beverly Act. The legislature applied the warranty protections of the Song-Beverly Act to all goods "sold" in California. We have no reason to believe that this provision, which is controlling in California courts when the Song-Beverly Act is sued upon directly–as in plaintiffs' first and second causes of action–would not also be controlling when the protections of the Song-Beverly Act are invoked indirectly through the Magnuson-Moss Act–as in plaintiffs' third and fourth causes of action. We already concluded that the motor home was "sold" in California. Therefore, we conclude that California warranty law is the substantive state law that underlies plaintiffs' Magnuson-Moss Act claims. Defendant's motion for summary judgment on plaintiffs' fourth cause of action, which is premised on inapplicable Arizona law, is accordingly denied (doc. 43).

**IV**

**IT IS ORDERED DENYING** defendant's motion for summary judgment (doc. 43).

DATED this 31st day of March, 2006.

.
_____
Frederick J. Martone
United States District Judge